ORIGINAL

FILED
JUL 14 2014
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HILL-ROM COMPANY, INC.<br>1069 State Route 46 East<br>Batesville, Indiana 47006<br><br>           Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>           Defendant. | No. 14- 611C<br><br>Judge _____ |

## COMPLAINT

Plaintiff, Hill-Rom Company, Inc. ("Hill-Rom"), through its undersigned counsel, brings this action against The United States of America ("United States" or "government"), and alleges the following:

### NATURE OF THIS ACTION

1. This is an action for breach of a contract (the "Contract") between Hill-Rom and the Centers for Medicare & Medicaid Services of the U.S. Department of Health and Human Services ("CMS").

2. The government abrogated and breached the Contract on or after July 15, 2008.

3. The government's abrogation and breach of the Contract has caused Hill-Rom substantial damages, both in loss of significant sums expended in preparation to perform the Contract and in lost profits.

### PARTIES

4. Hill-Rom is a corporation organized and existing under the laws of the State of Indiana.

5. The United States is a sovereign government that is bound to honor both the contractual obligations it undertakes and the requirements of the Fifth Amendment to the U.S. Constitution.

6. CMS is an agency of the United States, and at all times relevant to this action has been acting on behalf of the United States.

## FACTS

7. Medicare is a federal health insurance program for the aged and disabled. Among other things, the Medicare program provides and at all times relevant to this action has provided coverage for Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS"), including hospital beds and related supplies and support surfaces, for use by Medicare beneficiaries in their homes. The Medicare program is administered by CMS.

8. Prior to July 1, 2008, all Medicare participating suppliers of DMEPOS could furnish covered items of DMEPOS, including hospital beds and related supplies and support surfaces, to any Medicare beneficiary residing anywhere in the United States, and would be reimbursed for such items on the basis of a fee schedule. *See* 42 U.S.C. § 1395(m)(a); 42 C.F.R. §§ 414.210; 424.57. Hill-Rom is and at all times relevant to this action has been such a Medicare participating supplier.

9. To achieve Medicare program savings, in Section 302 of the Medicare Prescription Drug Improvement and Modernization Act of 2003 (the "MMA"), Congress established a program of competitive bidding for DMEPOS, under which contracts would be awarded to selected firms in specified regions for the supply of DMEPOS to Medicare beneficiaries. *See* Medicare Prescription Drug Improvement and Modernization Act of 2003, H.R. 1, 108th Cong., Pub. L. No. 108-173, § 302 (2003) (codified at 42 U.S.C. § 1395w-3).

10. On April 10, 2007, CMS promulgated final regulations implementing the competitive bidding/selective supplier contracting program for DMEPOS. 72 Fed. Reg. 17992 (April 10, 2007) (codified at 42 C.F.R. Parts 411 and 414) (the "Regulations").

11. Under the MMA and the Regulations, CMS was required to conduct competitive bidding for certain items of DMEPOS, including hospital beds and related supplies and support surfaces in 10 of the largest metropolitan statistical areas in 2007. This was the initial round of competitive bidding under Section 302 of the MMA (the "Initial Round").

12. The term of the Initial Round contracts was by law 3 years, from July 1, 2008 through June 30, 2011. *See, e.g.,* MMA § 302(b); CMS, *Medicare Claims Processing Manual*, ch. 36, § 20.5 (CMS Pub. 100-04) (CMS Trans. 1502) (May 9, 2008). The metropolitan statistical areas selected by CMS for competitive bidding are referred to in the Regulations as "competitive bid areas" or "CBAs." 42 C.F.R. § 414.402. CMS was required to solicit bids for DMEPOS items grouped into product categories for each CBA.

13. CMS was required to array the bid prices from low to high and, beginning with the lowest qualified bid, to select that number of contract suppliers sufficient to meet the projected demand for items in the product category in the CBA, but not more than that number (subject to special rules for small supplier participation). *See,* MMA § 302(b)(1); 42 C.F.R. § 414.414. Based on the bids submitted by the suppliers sufficient to meet projected demand, CMS was required to determine a "single payment amount" for each competitively bid item for each CBA. Following these procedures, CMS would enter contracts with the selected suppliers, called "contract suppliers," under the Regulations. *See* 42 C.F.R. § 414.402.

14. CMS performed these functions, selecting a limited numbers of suppliers and establishing a single payment amount for each product category in each CBA as determined by

the bids, as contemplated by and in accordance with the terms of MMA and the Regulations. By conducting competitive bidding and limiting the number of awarded suppliers, the government intended to achieve aggregate savings by providing the awarded contract suppliers higher volumes in exchange for reduced unit payments. In fact, the MMA and Regulations prohibited Medicare payment for competitively bid items furnished in CBAs to beneficiaries residing in the CBA where the items were furnished by non-contract suppliers (with a limited exception for rental of equipment in place on July 1, 2007). This, by statute and regulation, assured contract suppliers significant volumes that would be sufficient to enable them to reduce the per unit Medicare payment amounts for the competitively bid items.

15.    Hill-Rom, along with all other applicants to become contract suppliers, was required to submit its application to become a contract supplier by no later than September 25, 2007. Hill-Rom timely submitted its application.

16.    On May 21, 2008, CMS announced the contract suppliers and thereby awarded to Hill-Rom the Contract that is the subject of this action. Hill-Rom was selected as a contract supplier for 9 CBAs for hospital beds and related supplies and support surfaces. Thereafter, in a document dated June 20, 2008 ("ratification agreement"), Hill-Rom and CMS ratified and confirmed the Contract terms for the CBAs and the hospital beds and related supplies and support surfaces for which CMS had awarded the Contract to Hill-Rom.

17.    From the time CMS announced that Hill-Rom was a contract supplier, and thus awarded the Contract to Hill-Rom, Hill-Rom began to incur expenses to perform its responsibilities under the competitive bid program.

18. Beginning on July 1, 2008, in accordance with the Regulations, CMS instructions, and the ratification agreement with CMS, Hill-Rom began supplying items in accordance with the requirements of the MMA, Regulations, the Contract with CMS, and CMS instructions.

19. On July 15, 2008, Congress enacted the Medicare Improvements for Patients and Providers Act of 2008, HR 6331, 110th Cong., Pub. L. No. 110-275 (July 15, 2008) (the "2008 Act"). Pursuant to the 2008 Act, Congress or CMS abrogated and terminated the contracts awarded to contract suppliers in Round 1 of competitive bidding, including the Contract, after those contracts had been awarded and were in effect and being performed. In addition, Congress or CMS nullified Round 1 and provided that CMS would re-conduct the Round 1 bidding, so that previously awarded contract suppliers are required to re-compete and they have no assurance of being the contract suppliers in the new "Round 1." The 2008 Act provides in pertinent part as follows:

> (D) CHANGES IN COMPETITIVE ACQUISITION PROGRAMS.—
>
> (i) ROUND 1 OF COMPETITIVE ACQUISITION PROGRAM.—
>
> Notwithstanding subparagraph (B)(i)(I) [initially establishing Round 1 of competitive bidding] and in implementing the first round of the competitive acquisition programs under this section—
>
> (I) *the contracts awarded under this section before the date of the enactment of this subparagraph are terminated, no payment shall be made under this title on or after the date of the enactment of this subparagraph based on such a contract, and, to the extent*

> *that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1841[.]*

2008 Act, § 154 (emphasis added).

20. As a direct and proximate result of the abrogation of the government's Contract with Hill-Rom by operation of the 2008 Act, Hill-Rom has lost the entire amount of its initial investments in reliance upon and in preparation to furnish hospital beds and related supplies and support surfaces in the 9 CBAs in which it was a Round 1 contract supplier.

21. As a direct and proximate result of the abrogation of the government's Contract with Hill-Rom by operation of the 2008 Act, Hill-Rom lost the profits it would have earned as a contract supplier during the 3 year period of the Contract, *i.e.*, from July 1, 2008 through June 30, 2011.

## COUNT I

### (Breach of Contract)

22. Hill-Rom realleges all allegations of paragraphs 1 through 21 above.

23. By reason of the foregoing, the government is liable to Hill-Rom for breach of the Contract and for all damages incurred by Hill-Rom.

## COUNT II

### (Uncompensated Taking of Property)

24. Hill-Rom realleges all allegations of paragraphs 1 through 23 above.

25. The Contract and all amounts Hill-Rom has invested in order to perform the Contract constitute private property subject to and protected by the Just Compensation Clause of the Fifth Amendment to the U. S. Constitution.

26. By reason of the foregoing, the government has taken Hill-Rom's property, and because the government has not yet paid Hill-Rom any just compensation, the government is now liable to pay Hill-Rom just compensation from the date of the taking.

### PRAYER FOR RELIEF

Accordingly, Hill-Rom demands relief and judgment as follows:

On Count I, for all damages resulting from the government's breach of contract

On Count II, for just compensation as required by the Fifth Amendment.

On both Counts, for all reasonable attorneys' fees, litigation expenses and costs incurred by Hill-Rom in this action, in accordance with 28 U.S.C. § 4654(c) or as otherwise may be authorized by law;

On all Counts, for such other and further relief as the Court deems just and proper.

Dated: July 14, 2014

Respectfully submitted,

Jerry Stouck (signed by Danielle Diaz with permission)
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
(202) 331-3173 phone
(202) 261-4751 facsimile
*Attorney for Plaintiff Hill-Rom, Inc.*